## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| Granite State Plasma Cutting Ltd., ) | Bk. No. 14-12165-BAH (Lead Case) |
| Harmony Metal Products North, Inc., and ) | Bk. No. 14-12166-BAH |
| Harmony Land Holdings LLC, ) | Bk. No. 14-12167-BAH |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

### ORDER AUTHORIZING CHAPTER 11 TRUSTEE
### TO SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

This matter is before the Court on the *Motion to Sell Free and Clear of Liens Pursuant to 11 U.S.C. § 363(b) and (f)* [D.E. 181] (the "Sale Motion"), filed by Edmond J. Ford, as chapter 11 trustee in the above-captioned cases (the "Trustee"). On March 17, 2015, the Court held a hearing on the Sale Motion (the "Sale Hearing"), heard from all parties appearing, accepted the Trustee's offer of proof, and found that HMGS Finance, LLC ("HMGS") submitted the highest and best bid for the Debtors' Assets (as defined below). Now, upon the Sale Motion, the arguments of counsel advanced at the Sale Hearing, the Trustee's offer of proof, and all prior pleadings and proceedings made herein, and in accordance with the Court's approval of the *Trustee's Third Amended Chapter 11 Plan* [D.E. 307], the Court makes the following findings of fact and conclusions of law:

**Jurisdiction, Notice, Authority, and Statutory Predicates for Relief:**

1.     Pursuant to 28 U.S.C. §§ 157 and 1334, and L.R. 77.4(a) of the Local Rules of the United States District Court for the District of New Hampshire, this Court has exclusive jurisdiction over all assets of Granite State Plasma Cutting Ltd., Harmony Metal Products North, Inc., and Harmony Land Holdings LLC (collectively, the "Debtors") and their chapter 11 estates. Without limiting the generality of the foregoing, this Court has exclusive *in rem* jurisdiction over

1

the Debtors' assets pursuant to 28 U.S.C. § 1334(e), as such assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, the Court has all necessary power and authority to grant the relief contained herein.

2. The Sale Motion is a core proceeding as defined in 28 U.S.C. § 157(b).

3. Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), (k), and (m) of the Bankruptcy Code, and Fed. R. Bankr. P. (the "Rules") 2002 and 6004.

5. As evidenced by the certificates of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided in accordance with §§ 105(a) and 363 of the Bankruptcy Code, and Rules 2002 and 6004, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Sale is or shall be required.[1]  Without limiting the generality of the foregoing, the Trustee has given due and proper notice of the proposed sale of substantially all of the Debtors' Assets (as defined below) to all creditors and interest holders.  As described in the Certificate of Service filed with this court on February 11, 2015 [D.E. 233], notice of the sale was also published in the Union Leader on February 11, 2015, a newspaper of general circulation in the State of New Hampshire.  There has been a reasonable opportunity for all interested parties

---

[1] The Court previously entered an order [D.E. 207] granting the *Trustee's Amended Motion to Establish Sale Procedure* [D.E. 199], notice of which was good and sufficient, and appropriate under the circumstances.

and entities to object or be heard with respect to the Sale Motion and the relief requested therein and the rights of third parties to submit higher or otherwise better offers for the Assets.

6.  Pursuant to §§ 363 and 1104 of the Bankruptcy Code, the Trustee is authorized to sell the Assets upon the terms and conditions set forth below (the "Sale").

**Terms of the Sale and Findings Relating Thereto:**

7.  By the Sale Motion, the Trustee proposes to sell the following assets (collectively, the "Debtors' Assets"):

> A.  The "Transferred Assets," defined as: All real estate and buildings located at 1412 NH Route 175, Holderness, New Hampshire; all machinery, equipment and tooling owned by the Debtors, customer lists, any intellectual property owned by the Debtors, any intangibles, purchase orders, any book of business, trade names, trademarks, telephone numbers, websites, URL's and any associated goodwill and the Titled Vehicles (as defined below). The Transferred Assets do not include either (i) the Excluded Assets (as defined below) or (ii) the Ally Vehicles (as defined below). The Transferred Assets include the Supplemental Assets (as defined below), but the Supplemental Assets are conveyed subject to certain first priority liens.
>
> B.  The "Supplemental Assets," defined as: (i) that certain Samsung SL-20/500 CNC Turning Lathe (Ser. No. 11J440706); (ii) that certain Leadwell M50I 2007 CNC Vertical Machining Center (Ser. No. L2TJG0795); and (iii) that certain Incar S1H36/3 3 Roll Plate Bending Roll (Ser. No. I0408/027).
>
> C.  The "Titled Vehicles," defined as: (i) the 2000 GMC Sierra, last four digits of VIN being 5727; (ii) the 2004 GMC C6500, last four digits of VIN being 4275; (iii) the 2005 GMC Savana G3500, last four digits of VIN being 5905; and (iv) the 2005 GMC C5500 Topkick, last four digits of VIN being 580.

8.  HMGS shall have the option, but will not be required, to purchase the Supplemental Assets through the Sale. The Sale price, as set forth below, will remain unchanged regardless of whether HMGS elects or declines to purchase the Supplemental Assets. If HMGS shall fail to purchase the Supplemental Assets, then the same shall be deemed abandoned by the Estates on the

Closing Date.  HMGS shall file a notice within twenty eight days of the date of this Order describing whether it purchased the Supplemental Assets.

9. The Trustee does not propose to sell the following assets, and such assets are explicitly excluded from the Sale:

> D. The "Excluded Assets," defined as: (i) all cash and cash equivalents (including security deposits) (provided however that such cash, cash equivalents and security deposits are subject to other agreements between HMGS and the Estates, including those reflected in the *Trustee's Motion for Entry of Order Approving Terms of and Authorizing Trustee to Enter in Settlement Agreement with HMGS* [D.E. 198] (the "9019 Motion")); (ii) all personally identifiable information; (iii) all accounts receivable (provided however that accounts receivable are subject to other agreements between the Estate and HMGS, including those reflected in the 9019 Motion); (iv) all life insurance policies (which life insurance policies are subject to other agreements between the Estate and HMGS, including those reflected in the 9019 Motion); (v) the Mitsubishi water jet (which has been abandoned); and (vi) any customer property held for repair, rework or the like (including without limitation, the two plenums belonging to the Federal Government identified as a V35 Plenum, Serial Number 043 with miscellaneous screens and covers, and a V250 Plenum Serial Number 003 with miscellaneous screens and covers).
>
> E. The "Ally Vehicles," defined as: (i) that certain 2010 GMC Acadia, VIN # 1GKLVNED6AJ18273; and (ii) that certain 2010 GMC Sierra VIN # 1GT3K2BG7AF112807.

10. HMGS's winning bid for the Debtors' Assets was $1,550,000, allocated as follows:

> A. $500,000 (credit bid) on account of the Debtors' real estate (land and buildings) which is included in Class V in IRS Form 8594 – Asset Acquisition Statement under Section 1060;
>
> B. $940,000 (credit bid) on account of the Debtors' equipment, furniture and fixtures and other personal property which is part of Class V in Form 8594 less the amount to be allocated to inventory at Closing by physical count;
>
> C. $50,000 (credit bid) on account of Debtors' other personal property that falls within the definition of Class VI property under applicable IRS Regulations;
>
> D. $25,000 (credit bid) for good will and other property in Class VII as reported in form 8594;

4

    E. An amount to be determined by the Trustee and HMGS by physical count of inventory on the date of closing shall be allocated to Class IV; and

    F. <u>$35,000</u> (cash) on account of the Titled Vehicles (part of Class V).

11. The Sale excludes all warranties and representations. Specifically, all warranties of merchantability or fitness for a particular purpose shall be absolutely and irrevocably disclaimed. HMGS shall purchase the Debtors' Assets as is and where is. HMGS shall waive, and hereby is deemed to waive, all claims against the estate and any professionals or employees employed, retained or representing the estate in matters associated with the Sale.

12. Pursuant to the Court's prior Order [D.E. 251] granting the 9019 Motion, HMGS holds an allowed unsecured claim against the Debtors' estates, and nothing herein affects that claim or HMGS's rights related thereto against Raymond Harmony as guarantor of that claim.

13. HMGS and the Trustee anticipate closing the transaction outlined in the Sale Motion and determined at the Sale Hearing by the close of business on March 31, 2015 (the "<u>Closing Date</u>").

14. The Trustee's marketing and promotion of the Sale was good and sufficient under the circumstances.

15. The Trustee has demonstrated good, sufficient, and sound business purpose and justification, and compelling circumstances for the Sale, pursuant to §§ 105 and 363 of the Bankruptcy Code prior to, or in connection with, confirmation of a plan pursuant to § 1129 of the Bankruptcy Code.

16. The bidding process was open and fair.

17. HMGS's winning bid represents the highest and best offer for the Debtors' Assets, and no other higher bid was received by the Trustee or heard by the Court. The terms of the Sale

are fair and reasonable, and consummating the Sale is in the best interests of the Debtors' estates and creditors. The Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative. The Sale constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code

18. The Sale was negotiated, proposed, and entered into by the Trustee and HMGS without collusion, in good faith, at arm's length. Neither the Trustee, nor the Debtors or HMGS, has engaged in any conduct that would cause or permit the Sale to be avoided or avoidable under § 363(n) of the Bankruptcy Code. HMGS is not an "insider" or "affiliate" of the Debtors or the Trustee (as such terms are defined in the Bankruptcy Code).

19. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Assets, has been afforded to all interested parties and entities, including: (i) the Office of the United States Trustee; (ii) counsel for HMGS; and (iii) all entities (or counsel therefor) known to have asserted any liens, claims, causes of action, encumbrances, rights of refusal, security interests, pledges, judgments, demands, charges, defects, options, restrictions, and other interests of any kind whatsoever (collectively "Encumbrances" and each an "Encumbrance").

20. HMGS is acting, with respect to the Sale and this Order, as a good faith purchaser, as that term is used in the Bankruptcy Code and is, accordingly, entitled to the protections set forth in §363(m) of the Bankruptcy Code.

21. The conditions of § 363(f)(2), (4), and (5) of the Bankruptcy Code have been satisfied with respect to any and all persons or entities asserting any Encumbrance in or upon the Debtors' Assets because: (i) the New Hampshire Department of Employment Security withdrew its objection to the Sale Motion and is deemed to consent to the Sale, and Marcia Harmony has

6

consented to the Sale; (ii) such other Encumbrances are in bona fide dispute or have been avoided by prior order of the Court [D.E. 295, 296, 297 and 330]; or (iii) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance.

22. The provisions of § 363(b), (f), and (m) have been complied with, and are applicable to the Sale. The Trustee may sell the Debtors' Assets (except the Supplemental Assets) free and clear of all Encumbrances because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f) has been satisfied. If HMGS elects to purchase them, the Supplemental Assets shall be sold subject to Northstar Leasing's Encumbrances. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to § 363(f)(2). Those holders of Encumbrances (except Northstar Leasing) who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale. If HMGS elects to purchase the Supplemental Assets, Northstar Leasing's Encumbrances on the Supplemental Assets shall continue to attach to the Supplemental Assets and shall not attach to the proceeds of the Sale.

23. Cause exists to waive the stay imposed by Rule 6004(h), and such stay is hereby vacated and shall have no application to the relief afforded by this Order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

A. The Sale Motion is hereby GRANTED in all respects. The Sale is APPROVED in all respects. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on the merits.

B.  Pursuant to 11 U.S.C. § 363(b) of the Bankruptcy Code, the Trustee is hereby authorized and empowered, and, upon entry of this Order, has all the power and authority necessary to:

  i. Sell the Debtors' Assets as set forth above, consummate the Sale, and take all other lawful actions required to be taken pursuant to the Sale and the Sale Motion;

  ii. Receive the consideration from HMGS described in the Sale Motion and set forth above, and take any action necessary to effectuate the receipt of such consideration; and

  iii. Fully perform and take all action necessary to effectuate the Sale Motion, the transactions contemplated thereby, and the obligations contemplated by this Order. The Trustee is authorized to execute such other and usual documents as may be customary or necessary to effect the transactions herein contemplated including Declarations of Consideration or other tax forms to the state of New Hampshire, and the form PA-34; and the Trustee is further authorized to execute such documents as may be necessary or reasonable to effect the transfer of the Titled Vehicles.

C.  <u>Upon closing of the Sale,</u> all Encumbrances against the Debtors' Assets that are not explicitly provided for in this Order, or in any prior Order of the Court, are hereby discharged and released by this Order. Such liens are discharged and released by virtue of the Court's entry of this Order, and no other filing shall be required to effectuate the discharge and release of the liens. Without limiting the generality of the foregoing sentence, the Trustee is authorized, but not required, to file a certified copy of this Order in any relevant Registry of Deeds or Secretary of State's office as evidence of such discharge and release.

D.  Raymond Harmony is ordered to cooperate in the execution of any reasonable or necessary vehicle title assignments or related documentation in connection with the Sale and the transfer of the Titled Vehicles.

  E. The consummation of the Sale shall not subject HMGS to any liability whatsoever with respect to the pre-petition operation of the business of the Debtors or the post-petition operation of the business of the Debtors, including, without limitation, by reason of any theory of successor or transferee liability or similar theory or pursuant to any labor or employment agreements covering the current or former employees of the Debtors.  HMGS shall not have any liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Debtors' Assets.  Nothing in this Order or any agreement approved by this Order releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or any agreement approved by this Order authorizes transfer to HMGS of any licenses, permits, registrations, or other governmental authorizations and approvals without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers. Nothing in this paragraph shall be construed to render HMGS a successor to the Debtors under any successor liability doctrine with respect to liabilities under environmental laws or regulations.

  F. This Court retains jurisdiction to enforce and implement the terms and provisions of the Sale and this Order, including but not limited to, retaining jurisdiction (i) to resolve any disputes arising under or related to the Sale, except as otherwise provided therein; and (ii) to interpret, implement, and enforce the provisions of this Order.

  G. The terms and provisions of the Sale and this Order shall be binding in all respects upon, and shall insure to the benefit of the Trustee, HMGS, the Debtors, and the successors and assigns of each of the foregoing, and any affected third parties, notwithstanding any subsequent

conversion of these bankruptcy cases to cases under chapter 7 of the Bankruptcy Code or dismissal of these bankruptcy cases.

H. Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with or derogate from the provisions of this Order. The provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an order which may be entered confirming any plan of reorganization or liquidation of the Debtor.

I. This Order shall be effective as a determination that, on the Closing Date, all Encumbrances existing in the Debtors' Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. The Trustee or HMGS may record releases of the same on behalf of any Encumbrance-holder of record.

J. The provisions of this Sale Order are nonseverable and mutually dependent.

Dated:  March 18, 2015

                                             /s/ Bruce A. Harwood
                                             Honorable Bruce A. Harwood
                                             Chief United States Bankruptcy Judge